ZACHARY MOSNER, WSBA# 9566
Assistant Attorney General
Bankruptcy & Collections Unit
800 Fifth Avenue, Suite 2000
Seattle, Washington 98104-3188
(206) 389-2198

Judge Marc L. Barreca
Chapter 11
Hearing Date: June 1, 2012
Hearing Time: 9:30 a.m.
Hearing Location: Seattle
Response Due Date: May 25, 2012

## UNITED STATES BANKRUPTCY COURT
## WESTERN DISTRICT OF WASHINGTON

In re

VADIUM TECHNOLOGY, INC.,

Debtor.

NO. 12-10808

STATE OF WASHINGTON MOTION
TO DISMISS OR CONVERT.

COMES NOW counsel for the State of Washington and STATES as follows:

1. <u>Tax Driven Case</u>. The State is owed over $41,133.06 in tax. The IRS is merely owed $1.496 million.

2. <u>No Revenues Showing In Operating Reports</u>. Given the amount of tax debt, it is highly questionable to show no operating income while in a fiduciary position, allegedly trying to reorganize.

3. <u>Counsel's Retainer Paid By Alleged Acquiring Company</u>. Attached hereto is an email sent to counsel alleging that his retainer was paid by an "acquiring company". *Exhibit 1*. It was never replied to.

4. <u>The Corporate Identity of the Acquiring Entity</u>. This entity is controlled by Rod Nicholls who also controls the filing of the present case. *Exhibit 2*. Mr. Nicholls has several corporate endeavors pending. *Exhibit 3*. It bears noting that of those entities, one called "Vadium Wireless, Inc." seems to have substantial identity with investors and creditors herein. *Exhibit 4*. None of the companies referred to in *Exhibit 5* filed with the court have ever been registered with the State of

STATE OF WASHINGTON MOTION TO
DISMISS OR CONVERT

1

OFFICE OF THE ATTORNEY GENERAL
Bankruptcy & Collections Unit
800 Fifth Avenue, Suite 2000
Seattle, Washington 98104-3188
(206) 389-2187 phone – (206) 587-5150 fax

Washington. And, there is no disclosure whatsoever of Vadium Wireless activities. That would be notwithstanding the fact that *Exhibit 4* clearly states that "Vadium Technology Inc." is a "member".

5. <u>No Means To Reorganize</u>. The debtor clearly has no means for reorganization but has created a tangled web, perhaps intended to deceive. Thus, it is imperative this case convert to Chapter 7 so that a fiduciary can analyze these pained attempts to create complexity where there is no money but millions in debt.

*STATEMENT OF THE LAW*

1. <u>11 U.S.C. §1112 Has Illustrative Bases for Dismissal Or Conversion</u>.

The bases set forth for dismissal under §1112(b)(4) are intended only to be illustrative and not exclusive. The enumerated causes for dismissal are:

> (A) substantial or continuing loss to or diminution of the estate and the <u>absence of a reasonable likelihood of rehabilitation</u>;
> (B) gross mismanagement of the estate;
> (C) failure to maintain appropriate insurance that poses a risk to the estate or to the public;
> (D) unauthorized use of cash collateral substantially harmful to 1 or more creditors;
> (E) failure to comply with an order of the court;
> (F) unexcused failure to satisfy timely any filing or reporting requirement established by this title or by any rule applicable to a case under this chapter;
> (G) failure to attend the meeting of creditors convened under section 341(a) or an examination ordered under rule 2004 of the Federal Rules of Bankruptcy Procedure without good cause shown by the debtor;
> (H) failure timely to provide information or attend meetings reasonably requested by the United States trustee (or the bankruptcy administrator, if any);
> (I) failure to pay taxes owed after the date of the order for relief or to file tax returns due after the date of the order for relief;
> (J) failure to file a disclosure statement, or to file or confirm a plan, within the time fixed by this title or by order of the court;
> (K) failure to pay any fees or charges required under chapter 123 of title 28;
> (L) revocation of an order of confirmation under section 1144;
> (M) inability to effectuate substantial consummation of a confirmed plan;
> (N) material default by the debtor with respect to a confirmed plan;
> (O) termination of a confirmed plan by reason of the occurrence of a condition specified in the plan; and
> (P) failure of the debtor to pay any domestic support obligation that first becomes payable after the date of the filing of the petition.

Given broad discretion to dismiss a Chapter 11 case under (b)(2) as well for inability to effectuate a

STATE OF WASHINGTON MOTION TO
DISMISS OR CONVERT

2

OFFICE OF THE ATTORNEY GENERAL
Bankruptcy & Collections Unit
800 Fifth Avenue, Suite 2000
Seattle, Washington 98104-3188
(206) 389-2187 phone – (206) 587-5150 fax

plan, no trial court is constrained to wait until a plan is proposed. A case can and should be dismissed at any time for cause. In re Woodbrook Associates, 19 F.3d 312, 317 (7th Cir. 1994).

> Creditors, likewise, need not incur the added time and expense of a confirmation hearing on a plan they believe cannot be effectuated. See Hall v. Vance, 887 F.2d 1041, 1044 (10th Cir.1989) (case dismissed where acceptable plan was not filed within eight months of Chapter 11 petition). The very purpose of § 1112(b) is to cut short this plan and confirmation process where it is pointless.

In the context of a motion to dismiss premised upon (4)(A) pre-petition tax-filing conduct is not irrelevant to the court's inquiry. In re Dr. R.C. Samanta Roy Inst. Of Science Tech., Inc., 2011 WL 2350095 (3rd Cir. 2011) [p.5]. This court also reaffirms the holding of Woodbrook Assoc. as to the timing of motions to dismiss under §1112. Supra, p.4.

> Dismissal is appropriate if it is unreasonable to expect that a reorganization plan can be confirmed. Woodbrook Assocs., 19 F.3d at 316. The record in this case together with Bartle's lengthy litigation history with the government amply support the notion that a viable reorganization was unlikely in view of Bartle's extensive liabilities and limited assets. In re Bartle, 560 F.3d 724, 730 (7th Cir. 2009).

The time to intervene in mismanaged and "hopeless" cases is early on.

> The purpose of § 1112(b)(1) is to "preserve estate assets by preventing the debtor in possession from gambling on the enterprise at the creditors' expense when there is no hope of rehabilitation." In re Lizeric Realty Corp., 188 B.R. 499, 503 (Bankr. S.D.N.Y.1995). In re Loop Corp., 379 F.3d 511, 516 (8th Cir. 2004).

Processing and administration of the case cannot be based upon "boundless confidence" and "pure speculation" looking forward [cites omitted]. Supra, p. 519. The Eighth Circuit in Loop also affirms cutting short the plan and confirmation process where it is pointless, approving of Woodbrook Associates. Supra, p. 519.

> It is fair to state under the standards of the Third, Seventh and Eighth Circuits, there is no good reason to keep a case alive when it is facially clear from filed claims, Schedules and Statements,

STATE OF WASHINGTON MOTION TO
DISMISS OR CONVERT

3

OFFICE OF THE ATTORNEY GENERAL
Bankruptcy & Collections Unit
800 Fifth Avenue, Suite 2000
Seattle, Washington 98104-3188
(206) 389-2187 phone – (206) 587-5150 fax

Case 12-10808-MLB    Doc 24    Filed 04/30/12    Ent. 04/30/12 15:07:30    Pg. 3 of 35

1    *pro forma* operating statements filed with the petition and early DIP operating statements that debtor

2    does not have the ability to pay taxes in a Chapter 11 plan under the constraints of §1129(a)(9)(C).

3         2. The Futility Doctrine.

4         Even if there is no actual disclosure statement or plan before the court at the time, the court

5    should as part of its analysis apply the futility doctrine, which customarily has been applied to cut

6    short Chapter 11's at the time of disclosure statement review.

7         Under the doctrine, the court has an independent obligation to determine whether a

8    disclosure statement includes adequate information within the meaning of the 11 U.S.C. § 1125(b).

9    In re Eastern Maine Elec. Co-Op., Inc., 125 B.R. 329, 333 (Bankr. D. Me. 1991). Generally, a

10   disclosure statement must contain all pertinent information bearing on the success or failure of the

11   proposals in the plan of reorganization. In re Cardinal Congregate I, 121 B.R. 760, 765 (Bankr.

12   S.D. Ohio 1990); In re Stanley Hotel, Inc., 13 B.R. 926, 929 (Bankr. D. Col. 1981). A disclosure

13   statement should likewise contain all material information relating to the risks posed to creditors

14   and equity interest holders under the proposed plan of reorganization. Id.

15        The question of whether a plan meets the confirmation requirement of 11 U.S.C. § 1129 is

16   usually answered at confirmation hearings. In re Eastern Maine Elec. Co-Op., Inc., 125 B.R. 329,

17   333 (Bankr. D.Me. 1991); In re Unichem Corp., 72 B.R. 95, 98 (Bankr.N.D.Ill. 1987), aff'd, 80

18   B.R. 448 (N.D.Ill. 1987). However, if the disclosure statement describes a plan that is so "fatally

19   flawed" that confirmation under 11 U.S.C. § 1129 is "impossible," the court should address the

20   plan's inadequacies at the disclosure statement stage.1   Such an exercise of discretion is

21   appropriate because undertaking the burden and expense of plan distribution and vote solicitation

22

23   1     Accord, In re Bjolmes Realty Trust, 134 B.R. 1000, 1002 (Bankr. D.Mass. 1991); In re Eastern Maine Elec.
Co-Op., Inc., 125 B.R. 329, 333 (Bankr. D.Me. 1991); In re Cardinal Congregate I, 121 B.R. 760, 765 (Bankr.

24   S.D.Ohio 1990); In re Hirt, 97 B.R. 981, 983 (Bnkr. E.D.Wis. 1989); In re Spanish Lake Associates, 92 B.R. 875,
877 (Bankr. E.D.Mo. 1988); In re Atlanta West VI, 91 B.R. 620, 622 (Bankr.N.D.Ga. 1988); In re Unichem Corp.,

25   72 B.R. 95, 98 (Bankr. N.D.Ill. 1987), aff'd, 80 B.R. 448 (N.D.Ill. 1987); In re Monroe Wll Service, Inc., 80 B.R. 324,
333 (Bankr. E.D.Pa. 1987); In re Pecht, 53 B.R. 768, 769-70 (Bankr.E.D.Va.1985) aff'd, 57 B.R. 137 (E.D. Va.

26   1986); In re McCall, 44 B.R. 242, 243-44 (Bankr. E.D.Pa. 1984); In re Kehn Ranch, Inc., 41 B.R. 832, 832-33
(Bankr. D.S.D. 1984); In re Genesee Cement, Inc., 31 B.R. 442, 443-44 (Bankr. E.D.Mich. 1983).

STATE OF WASHINGTON MOTION TO     4
DISMISS OR CONVERT

OFFICE OF THE ATTORNEY GENERAL
Bankruptcy & Collections Unit
800 Fifth Avenue, Suite 2000
Seattle, Washington 98104-3188
(206) 389-2187 phone – (206) 587-5150 fax

Case 12-10808-MLB    Doc 24    Filed 04/30/12    Ent. 04/30/12 15:07:30    Pg. 4 of 35

is a wasteful and fruitless exercise if the plan is unconfirmable on its face. Id. Hence, if "the Court can determine from a reading of the plan that it does not comply with § 1129 of the Bankruptcy Code, then it is incumbent upon the court to decline approval of the disclosure statement." In re Spanish Lake Associates, 92 B.R. 875, 877 (Bankr.E.D.Mo. 1988), citing, In re Pecht, 53 B.R. 768, 769-70 (Bankr. E.D.Va. 1985) aff'd, 57 B.R. 137 (E.D.Va. 1986).

One requirement mandated by 11 U.S.C. § 1129 that is ripe for determination at the disclosure statement stage is feasibility. Section 1129(a)(11) requires the Court to find that confirmation of the debtor's ch.11 plan "is not likely to be followed by the liquidation, or need for further financial reorganization, of the debtor ..." 11 U.S.C. § 1129(a)(11). The Second Circuit has explained that: "Under the test of feasibility, the court views the probability of actual performance of the provisions of the plan. Sincerity, honesty, and willingness are not sufficient to make the plan feasible, and neither are any visionary promises. The test is whether the things which are to be done after confirmation can be done as a practical matter under the facts." Chase Manhattan Mortgage and Realty Trust v. Bergman (In re Bergman), 585 F.2d 1171, 1179 (2nd Cir.1978). See also, Pizza of Hawaii, Inc. v. Shakey's, Inc. (In re Pizza of Hawaii, Inc.), 761 F.2d 1374, 1382 (9th Cir. 1985) (the purpose of section 1129(a)(11) is to prevent confirmation of visionary schemes). "Neither the Code nor its predecessor statutes were intended to prolong a hopeless situation and to postpone inevitable liquidation. If the facts indicate that the plan cannot be performed, it is not feasible and cannot be confirmed." In re Great Northern Protective Services, Inc., 19 B.R. 802, 803 (Bankr. W.D. Wash. 1982).

In determining whether a plan is prolonging "a hopeless situation," the court in *Great Northern Protective Services Inc.* identified the following five factors as pertinent:

    (1)    the business earning power;
    (2)    the sufficiency of capital structure;
    (3)    economic conditions;
    (4)    managerial efficiency; and,
    (5)    whether same management will continue to operate the company. Id. at 803

OFFICE OF THE ATTORNEY GENERAL
Bankruptcy & Collections Unit
800 Fifth Avenue, Suite 2000
Seattle, Washington 98104-3188
(206) 389-2187 phone – (206) 587-5150 fax

A nebulous plan that is neither adequate, feasible nor practicable is cause for conversion. In re Koerner, 800 F.2d 1358, 1368 (5th Cir. 1986). "[W]here there is no reasonable possibility of an effective reorganization, the bankruptcy court is not compelled to wait a certain period of time, to the detriment of creditors, before ordering conversion of the case." In re Johnston, 149 B.R. 158 (Bankr. 9th Cir. 1992) (conversion ordered for "hopeless" debtor less than four months after filing Chapter 11 petition). Thus, conversion of Chapter 11 case in early stages of proceeding is judicious where there is "no more than a hopeless and unrealistic prospect of rehabilitation." In re Economy Cab & Tool Co., 44 B.R. 721, 724 (Bankr. D.Minn. 1984). See, Stage I Land CO. v. HUD, 71 B.R. 225, 231 (D.Minn. 1986) (Chapter 11 case should be dismissed at the outset for cause where no reasonable possibility of a reorganization exists); In re Macon Prestressed Concrete Co., 61 B.R. 432, 436 (Bankr. M.D.Ga. 1986) (debtor should not be permitted to continue in Chapter 11 if the efforts to reorganize are futile).

As the Fifth Circuit recently stated, "Many courts have found debtors' statements that funding is forthcoming to be insufficient in the absence of concrete evidence that the contributors are willing to give and capable of giving." *Save Our Springs (S.O.S.) Alliance, Inc. v. WSI (II)-COS, LLC*, 632 F.3d 168, 173 n. 8 (5th Cir.2011).[FN8] *See also In re Made in Detroit, Inc.*, 299 B.R. 170, 180 (Bankr.E.D.Mich.2003) (denying confirmation where proposed financing was based on contingencies, at best conditional, and thus, not feasible); *In re Atrium High Point Ltd. P'ship*, 189 B.R. 599, 610 (Bankr.M.D.N.C.1995) (debtor's plan to obtain refinancing was speculative where industry standard was to refinance 75%–80% of the value of the property, which amount would be insufficient to meet plan obligations); *In re Haardt*, 65 B.R. 697, 702 (Bankr.E.D.Pa.1986) (finding no reasonable chance of refinancing where debtor offered no credible evidence as to why it had been unable to obtain refinancing during the two years since filing bankruptcy, no evidence as to the value of the properties, and no evidence as to its general financial situation and prospects).

[8] Ninth Circuit law is consistent. "The purpose of section 1129(a)(11) is to prevent confirmation of visionary schemes which promise creditors and equity security holders more under a proposed plan than the debtor can possibly attain after confirmation." *Pizza of Hawaii, Inc. v. Shakey's, Inc. (In re Pizza of Hawaii, Inc.)*, 761 F.2d 1374, 1382 (9th Cir.1985) (quoting 5 COLLIER ON BANKRUPTCY ¶ 1129.02[11] at 1129–34 (15th ed.1984)). Las Vegas Monorail Corp., 2011 WL 6145516 (Bankr. D.Nev. 2011). [p.4].

STATE OF WASHINGTON MOTION TO DISMISS OR CONVERT

6

OFFICE OF THE ATTORNEY GENERAL
Bankruptcy & Collections Unit
800 Fifth Avenue, Suite 2000
Seattle, Washington 98104-3188
(206) 389-2187 phone – (206) 587-5150 fax

These standards are imposed for a very practical reason:

> As this court has previously stated, "[f]easibility is ... the last, best hope of those who wish to prevent reorganization from becoming a revolving door for frangible firms doomed to fail again and again." *In re Trans Max*, 349 B.R. at 93; *see also Price v. Spokane Silver & Lead Co.*, 97 F.2d 237, 247 (8ᵗʰ Cir.1938) ("it was not the intention of Congress in enacting Sec. 77B [one of the first reorganization statutes] to place crutches under corporate cripples, fit subjects for liquidation, and send them out into the business world to be a menace to all who might purchase their securities or deal with them on credit."). <u>Supra</u>, p.6.

3. <u>Bad Faith Standards</u>.

There are well-established tests to determine bad faith filing. <u>In re Elmwood Devel.Co.</u>, 964 F.2d 508, 510-511 (5ᵗʰ Cir. 1992): *rehg.den'd*: 974 F.2d 1337.

> The good faith standard protects the integrity of the bankruptcy courts and prohibits a debtor's misuse of the process where the overriding motive is to delay creditors without any possible benefit, or to achieve a reprehensible purpose through manipulation of the bankruptcy laws. The good faith determination depends largely upon the bankruptcy court's on-the-spot evaluation of the debtor's financial condition, motives, and the local financial realities. <u>Supra</u>:p.510.

In the instant proceedings the overriding motive is delay. The debtor's subjective good faith is irrelevant in light of objective standards of review.

A "full-blown" evidentiary hearing is not required in motions relating to bad faith dismissal. See: <u>In re Zick</u>, 931 F.2d 1124, 1129 (6ᵗʰ Cir. 1991).[2] As noted by the court therein, more often then not, courts investigating "bad faith" employ the "smell test". <u>Supra</u>:p.1127. It does not take surgical precision to review the facts relating to this filing and conclude that this case doesn't pass the smell test.

In measuring the "good faith" of the debtor in filing and promulgating a plan, the court must consider whether there is an intent to abuse the judicial process. <u>In re Eden Assoc.</u>, 13 B.R. 578, 584 (Bankr. S.D.N.Y. 1981). In conjunction with its inquiry, the court will find bad faith should it

---

[2] As cited in *Elmwood Dev.Co.*, *supra*: p.512.

STATE OF WASHINGTON MOTION TO DISMISS OR CONVERT
    7

OFFICE OF THE ATTORNEY GENERAL
Bankruptcy & Collections Unit
800 Fifth Avenue, Suite 2000
Seattle, Washington 98104-3188
(206) 389-2187 phone – (206) 587-5150 fax

determine that the debtor's pre-filing conduct was "cavalier" and "deceitful".

The secreting of assets, acts of prior misconduct, and proof of intent to escape a "day of reckoning in state court" demonstrates "bad faith". In re Victory Constr.Co., 9 B.R. 549, 558- 560 (Bankr. C.D.Cal.1981). In reviewing evidence of bad faith, the court will consider whether a statute is being used for malicious delay. In re Ericson, 26 B.R. 973, 976 (Bankr. C.D.Cal. 1983) [dicta]. Accordingly, the bankruptcy court is said to have the inherent discretionary power to prevent the continuation of a proceeding where the court perceives an intent to abuse the purpose of the Code. "The Good Faith Principle in The Bankruptcy Code", R.L.Ordin, *The Business Lawy.*, Vol.38, No.4, p.1795, 1797. Broad inquiry into the conduct and state of mind of the debtor is consistent with investigation of "good faith". In re Yavarkovsky, 23 B.R. 756, 759 (Bankr. S.D.N.Y. 1982).

> ....inquiry will often focus on conduct of a debtor in the context of candor, frankness, sincerity, and willingness to do equity, which are said to be the indicia of good faith."
> *Ordin*, supra, p.1797.

The debtor's treatment of creditors prior to filing is indicia as to good faith filing. In re Smith, 43 B.R. 319, 322 (Bankr. E.D.N.C. 1984).

4. Wrongful Behavior Justifying Dismissal/Conversion

The State requests the court to appoint a trustee or convert or the reasons set forth in its "Statement of Facts". The appointment of a trustee is governed by 11 U.S.C. § 1104(a), which provides:

> (a)   At any time after the commencement of the case but before confirmation of a plan, on request of a party in interest, and after notice and a hearing, the court shall order the appointment of a trustee—
> (1)   for cause, including fraud, dishonesty, incompetence, or gross mismanagement of the affairs of the debtor by current management, either before or after the commencement of the case, or similar cause, but not including the number of holders of securities of the debtor or the amount of assets or liabilities of the debtor; or
> (2) if such appointment is in the interests of creditors, any equity security holders, and other interests of the estate, without regard to the number of holders of

STATE OF WASHINGTON MOTION TO                    8
DISMISS OR CONVERT

OFFICE OF THE ATTORNEY GENERAL
Bankruptcy & Collections Unit
800 Fifth Avenue, Suite 2000
Seattle, Washington 98104-3188
(206) 389-2187 phone – (206) 587-5150 fax

Case 12-10808-MLB    Doc 24    Filed 04/30/12    Ent. 04/30/12 15:07:30    Pg. 8 of 35

securities of the debtor or the amount of assets or liabilities of the debtor.

The "request of a party in interest" language in 11 U.S.C. § 1104(a) does not preclude the court from *sua sponte*, holding a hearing to discuss the appointment of a Chapter 11 trustee. See: In re Bibo, Inc., 76 F.3d 256, 258 (9th Cir. 1996) [construing 11 U.S.C. § 105(a)]; accord: In re Greene, 127 B.R. 805 (Bankr. N.D.Oh. 1991); In re Dilley, 125 B.R. 189 (Bankr. N.D. Oh. 1991). Furthermore, the court "shall" appoint a trustee if a party in interest shows cause, including fraud and gross mismanagement, or shows that the appointment is in the interest of creditors or equity security holders. Id. at 258-259. The State contends that a Chapter 11 trustee must be appointed for a variety of reasons, including creditor dissatisfaction, gross mismanagement and intentional abuse of state and federal tax laws.

i) Gross Mismanagement.

A debtor-in-possession's gross mismanagement of a company is a well-documented instance where a court must appoint a Chapter 11 trustee. The condition of financial records is a major factor in determining mismanagement. "[W]hen a debtor fails to maintain complete and accurate financial records, or fails to substantiate undocumented transactions, so that there appears to be a confusion in the debtor's accounting system, the courts have viewed these facts as gross mismanagement and have directed the appointment of a Chapter 11 trustee." In re McCorhill Pub., Inc., 73 B.R. 1013, 1017 (Bankr. S.D.N.Y. 1987). See also: In re Main Line Motors, Inc., 9 B.R. 782, 784 (Bankr .E.D.Pa. 1981); Midlantic National Bank v. Anchorage Boat Sales, Inc. (In re Anchorage Boat Sales, Inc.), 4 B.R. 635, 645 (Bankr. E.D.N.Y. 1980); Hotel Associates, Inc. v. Trustees of Central States SE and SW Areas Pension Fund (In re Hotel Associates, Inc.), 3 B.R. 343, 345 (Bankr. E.D. Pa. 1980); In re Sharon Steel Corp., 871 F.2d 1217, 1225 (3rd Cir. 1980); In re Wings Digital, 2005 WL 3789334 (Bankr. S.D. N.Y. 2005); In re G-I Holdings, Inc., 385 F.3d 313 (3rd Cir. 2004). "Similarly, where there are questionable inter-company financial transfers and the principals of the debtor occupy conflicting positions in the transferee companies, a trustee should be appointed in the best interests of

STATE OF WASHINGTON MOTION TO DISMISS OR CONVERT

9

OFFICE OF THE ATTORNEY GENERAL
Bankruptcy & Collections Unit
800 Fifth Avenue, Suite 2000
Seattle, Washington 98104-3188
(206) 389-2187 phone – (206) 587-5150 fax

creditors and all parties to investigate the financial affairs of the debtor." In re McCorhill Pub. Inc., 73

B.R. at 1017. See also: In re Philadelphia Athletic Club, Inc., 15 B.R. 60 (Bankr.E.D.Pa. 1981).

Furthermore, where records are incomplete or unavailable as to whom pre-petition disbursements

were made, a "Chapter 11 trustee must be appointed in the best interests of creditors and all parties in

interest in order to investigate the financial affairs of the debtor." Id. at 1016-1017. Much of the

successorship liability herein relates to transfers from family members.

In McCorhill, the financial vice president testified that he had no financial information

regarding an entire office under his supervision. Id. at 1015. He also testified that $27,500 in

disbursements were unaccounted for. Id. at 1016. Furthermore, the debtor in McCorhill made

undocumented intra-company loans to its principals. Id. at 1017. The court in McCorhill held that

the debtor's incomplete and haphazard financial records and inter-company loans were conclusive

evidence of gross mismanagement and appointed a Chapter 11 trustee. Id. at 1017. In the case at

hand there are substantial issues of successorship and tax abuse.

ii) Creditor Dissatisfaction.

Creditor dissatisfaction is a valid reason for a court to appoint a Chapter 11 trustee under §

1104(a)(2). This is because the debtor's directors bear essentially the same fiduciary obligations to

creditors and shareholders as a trustee for a debtor out of possession and creditors are always free to

raise grievances about the management skills of a trustee. In re Curry and Sorenson, Inc., 57 B.R.

824, 828 (Bankr. 9th Cir. 1986)) (interpreting Commodity Futures Trading Comm'n v. Weintraub,

471 U.S. 343, 352, 105 S. Ct. 1986, 1993, 85 L. Ed. 2d 372 (1985). The factors the court considers in

replacing a debtor-in-possession with a Chapter 11 trustee under § 1104(a)(2) are essentially the same

as the factors it considers in replacing an existing trustee. Among the factors considered are:

(i) the trustworthiness of the debtor,
(ii) the debtor in possession's past and present performance and prospects for the
debtor's rehabilitation,
(iii) the confidence—or lack thereof—of the business community and of creditors in
present management, and

OFFICE OF THE ATTORNEY GENERAL
Bankruptcy & Collections Unit
800 Fifth Avenue, Suite 2000
Seattle, Washington 98104-3188
(206) 389-2187 phone – (206) 587-5150 fax

1    (iv) the benefits derived by the appointment of a trustee, balanced against the cost of
2    the appointment.In re Ionosphere Clubs, Inc., 113 B.R. 164, 168 (Bankr. S.D.N.Y.
     1990).

3    "A debtor-in-possession must act as a 'fiduciary of his creditors' to 'protect and to conserve property

4    in his possession for the benefit of creditors', and to 'refrain from acting in manner which could

5    damage the estate, or hinder a successful reorganization of the business.'" Id. at 169. A debtor-in-

6    possession's fiduciary duties include refraining from activities which could damage the estate and

7    when the debtor-in-possession is incapable of performing its duties, a Chapter 11 trustee may be

8    appointed. Id.

9    All four factors weigh in the favor of appointment. First, the trustworthiness of the debtor is in

10   serious dispute. Second, the debtor-in-possession's past and present performance is poor, as is the

11   prospect of the debtor's rehabilitation. Third, there is little confidence in the present management by

12   its creditors. Finally, the benefits derived from the appointment of a trustee are manifest.

13                                   *CONCLUSION*

14   The State requests that a Chapter 7 trustee be appointed and alternatively requests that the

15   court dismiss the case. 11 U.S.C. § 1104 states that a trustee shall be appointed for cause,

16   including gross mismanagement, or if such appointment is in the interests of creditors. Debtor has

17   been and is currently being grossly mismanaged. There is a clear and concerted intent to disregard

18   state and federal tax laws.

19   DATED this ____ day of April, 2012.

20                                              ROBERT M. MCKENNA
21                                              Attorney General

22                                              ZACHARY MOSNER, WSBA No. 9566
23                                              Assistant Attorney General
                                                Bankruptcy & Collections Unit
24

25

26

STATE OF WASHINGTON MOTION TO          11          OFFICE OF THE ATTORNEY GENERAL
DISMISS OR CONVERT                                          Bankruptcy & Collections Unit
                                                              800 Fifth Avenue, Suite 2000
                                                             Seattle, Washington 98104-3188
                                                      (206) 389-2187 phone – (206) 587-5150 fax

Case 12-10808-MLB    Doc 24    Filed 04/30/12    Ent. 04/30/12 15:07:30    Pg. 11 of 35

1    (iv) the benefits derived by the appointment of a trustee, balanced against the cost of
2    the appointment.In re Ionosphere Clubs, Inc., 113 B.R. 164, 168 (Bankr. S.D.N.Y.
     1990).

3    "A debtor-in-possession must act as a 'fiduciary of his creditors' to 'protect and to conserve property

4    in his possession for the benefit of creditors', and to 'refrain from acting in manner which could

5    damage the estate, or hinder a successful reorganization of the business.'" Id. at 169. A debtor-in-

6    possession's fiduciary duties include refraining from activities which could damage the estate and

7    when the debtor-in-possession is incapable of performing its duties, a Chapter 11 trustee may be

8    appointed. Id.

9    All four factors weigh in the favor of appointment. First, the trustworthiness of the debtor is in

10   serious dispute. Second, the debtor-in-possession's past and present performance is poor, as is the

11   prospect of the debtor's rehabilitation. Third, there is little confidence in the present management by

12   its creditors. Finally, the benefits derived from the appointment of a trustee are manifest.

13                                   *CONCLUSION*

14   The State requests that a Chapter 7 trustee be appointed and alternatively requests that the

15   court dismiss the case. 11 U.S.C. § 1104 states that a trustee shall be appointed for cause,

16   including gross mismanagement, or if such appointment is in the interests of creditors. Debtor has

17   been and is currently being grossly mismanaged. There is a clear and concerted intent to disregard

18   state and federal tax laws.

19   DATED this _____ day of April, 2012.

20                                              ROBERT M. MCKENNA
21                                              Attorney General

22                                              ZACHARY MOSNER, WSBA No. 9566
23                                              Assistant Attorney General
                                                Bankruptcy & Collections Unit
24

25

26

STATE OF WASHINGTON MOTION TO          11          OFFICE OF THE ATTORNEY GENERAL
DISMISS OR CONVERT                                          Bankruptcy & Collections Unit
                                                              800 Fifth Avenue, Suite 2000
                                                             Seattle, Washington 98104-3188
                                                      (206) 389-2187 phone – (206) 587-5150 fax

Case 12-10808-MLB    Doc 24    Filed 04/30/12    Ent. 04/30/12 15:07:30    Pg. 11 of 35

| | |
|---|---|
| **From:** | Mosner, Zachary (ATG) |
| **Sent:** | Tuesday, April 03, 2012 8:51 AM |
| **To:** | 'dallas@jolleylaw.com'; bill courshon |
| **Cc:** | Danae.M.Rawson@irscounsel.treas.gov; catherine.l.campbell@irscounsel.treas.gov |
| **Subject:** | 12-10808 Vadium |

Mr. Jolley:

You received a "retainer" from a prospective purchaser, which is generally not permissible under governing case law, creating an inherent conflict of interest. May I hear more about this corporation in formation and its connection to the debtor-in-possession.

To refresh your memory, the debtor and your offices are cloaked and charged with fiduciary duties. It is well-established case law that the debtor-in-possession has a fiduciary duty to creditors and the court. CFTC v. Weintraub, 471 U.S. 343, 355, 105 S.Ct. 85 L.Ed.2d 372 (1986).

[16][17][18] First, the fiduciary duty of the trustee runs to shareholders as well as to creditors. See, e.g., In re Washington Group, Inc., 476 F.Supp., at 250; In re Ducker, 134 F. 43, 47 (CA6 1905). [FN7] Second, respondents do not explain why, out of all management powers, control over the attorney-client privilege should remain with those elected by the corporation's shareholders. Perhaps most importantly, respondents' position ignores the fact that bankruptcy causes fundamental changes in the nature of corporate relationships. One of the painful facts of bankruptcy is that the interests of shareholders become subordinated to the interests of creditors. In cases in which it is clear that the estate is not large enough to cover any shareholder claims, the trustee's exercise of the corporation's attorney-client privilege will benefit only creditors, but there is nothing anomalous in this result; rather, it is in keeping with the hierarchy of interests created by the bankruptcy laws. See generally 11 U.S.C. § 726(a). Supra, p.355.

The result in this case was for the court to give the Chapter 7 Trustee the right to waive the attorney-client privilege. In dicta the court made it clear that a Chapter 11 DIP would be bound by this analysis as well. See also Anchorage Nautical Tours,Inc., 145 B.R. 637, 643 (Bankr. 9th Cir. 1992).

Case law has distinguished the relationship between debtor corporations and their directors pre- and post-petition as changing the nature of the director's duties from "helmsman to guardian." In re Baldwin-United Corp., 43 B.R. 443, 459-460, n. 22 (S.D.Ohio 1984). That is, "directors of a Chapter 11 debtor are not fiduciaries of the corporation; rather, they are fiduciaries of the estate, which the debtor in possession holds as Trustee for the creditors...." Id. at 460. The same reasoning applies to other officers of the debtor in possession.

[6][7] Under §1107(a), the debtor in possession has the same fiduciary duties and liabilities as a Trustee. When the debtor is a corporation, corporate officers and directors are considered to be fiduciaries both to the corporate debtor in possession and to the creditors. In re Crouse Group, Inc., 75 B.R. 553, 557-558 (Bankr.E.D.Pa.1987); In re Club Dev. & Management Corp., 27 B.R. 610, 612 (9th Cir. BAP 1982); see also Federal Rule of Bankruptcy Procedure 9001(5). As a fiduciary, a corporate officer is not free to deal with after-acquired property as it chooses, but rather holds it in trust for the benefit of creditors. Ford Motor Credit Co. v. Weaver, 680 F.2d

**EXHIBIT 1**

451, 462 (6th Cir.1982); *see In re Woodson*, 839 F.2d 610, 614 (9th Cir.1988). Accordingly, Holta, as president of the debtor corporations, owed a fiduciary duty to the creditors and the debtor in possession so long as the Debtors remained under the protection of Chapter 11. He violated his trust as a fiduciary.

When "weighty" legal decisions are being made, they cannot be made on any basis of insular self-interest, but rather on behalf of a number of creditor constituencies and interests. This is the information showing on the entity that posted your retainer. Absent a suitable explanation I will bring a motion to disqualify you within ten (10) days.

ALPHACIPHER ACQUISITION CORPORATION

| | |
|---|---|
| **Business Name:** | ALPHACIPHER ACQUISITION CORPORATION |
| **License Type:** | Washington State Business |
| **Entity Type:** | Profit Corporation |
| **UBI:** | 603055057    Business ID:001    Location ID:0001 |
| **Status:** | To check the status of this company, go to Secretary of State and Department of Revenue. |

**cation Address:**
1 2ND AVE S STE 500
ATTLE, WA, 98104-3804

**Mailing Address:**
401 2ND AVE S STE 500
SEATTLE, WA, 98104

**Governing People:**
ROD NICHOLLS

*Zac*

*hary Mosner*

Ass't Attorney General
State of Washington
Bankruptcy & Collections Unit
(206) 389-2198
fax    587-5150

| Voluntary Petition | Name of Debtor(s): |
|---|---|
| *(This page must be completed and filed in every case)* | **Vadium Technology, Inc.** |

**Signatures**

### Signature(s) of Debtor(s) (Individual/Joint)

I declare under penalty of perjury that the information provided in this petition is true and correct.
[If petitioner is an individual whose debts are primarily consumer debts and has chosen to file under chapter 7] I am aware that I may proceed under chapter 7, 11, 12, or 13 of title 11, United States Code, understand the relief available under each such chapter, and choose to proceed under chapter 7.
[If no attorney represents me and no bankruptcy petition preparer signs the petition] I have obtained and read the notice required by 11 U.S.C. §342(b).

I request relief in accordance with the chapter of title 11, United States Code, specified in this petition.

X _____
Signature of Debtor

X _____
Signature of Joint Debtor

_____
Telephone Number (If not represented by attorney)

_____
Date

### Signature of Attorney*

X  **/s/ Dallas W. Jolley, Jr.**
Signature of Attorney for Debtor(s)

**Dallas W. Jolley, Jr. 22957**
Printed Name of Attorney for Debtor(s)

**Dallas W. Jolley, Jr.**
Firm Name

**4707 So. Junett St.**
**Suite B**
**Tacoma, WA 98409**
Address

**Email: dallas@jolleylaw.com**
**(253) 761-8970  Fax: (253) 761-7910**
Telephone Number

**January 30, 2012**
Date

*In a case in which § 707(b)(4)(D) applies, this signature also constitutes a certification that the attorney has no knowledge after an inquiry that the information in the schedules is incorrect.

### Signature of Debtor (Corporation/Partnership)

I declare under penalty of perjury that the information provided in this petition is true and correct, and that I have been authorized to file this petition on behalf of the debtor.

The debtor requests relief in accordance with the chapter of title 11, United States Code, specified in this petition.

X  **/s/ Rodney Gene Nicholls**
Signature of Authorized Individual

**Rodney Gene Nicholls**
Printed Name of Authorized Individual

**President & CEO**
Title of Authorized Individual

**January 30, 2012**
Date

### Signature of a Foreign Representative

I declare under penalty of perjury that the information provided in this petition is true and correct, that I am the foreign representative of a debtor in a foreign proceeding, and that I am authorized to file this petition.

(Check only one box.)

☐ I request relief in accordance with chapter 15 of title 11, United States Code. Certified copies of the documents required by 11 U.S.C. §1515 are attached.

☐ Pursuant to 11 U.S.C. §1511, I request relief in accordance with the chapter of title 11 specified in this petition. A certified copy of the order granting recognition of the foreign main proceeding is attached.

X _____
Signature of Foreign Representative

_____
Printed Name of Foreign Representative

_____
Date

### Signature of Non-Attorney Bankruptcy Petition Preparer

I declare under penalty of perjury that: (1) I am a bankruptcy petition preparer as defined in 11 U.S.C. § 110; (2) I prepared this document for compensation and have provided the debtor with a copy of this document and the notices and information required under 11 U.S.C. §§ 110(b), 110(h), and 342(b); and, (3) if rules or guidelines have been promulgated pursuant to 11 U.S.C. § 110(h) setting a maximum fee for services chargeable by bankruptcy petition preparers, I have given the debtor notice of the maximum amount before preparing any document for filing for a debtor or accepting any fee from the debtor, as required in that section. Official Form 19 is attached.

_____
Printed Name and title, if any, of Bankruptcy Petition Preparer

_____
Social-Security number (If the bankruptcy petition preparer is not an individual, state the Social Security number of the officer, principal, responsible person or partner of the bankruptcy petition preparer.)(Required by 11 U.S.C. § 110.)

_____
Address

X _____

_____
Date

Signature of bankruptcy petition preparer or officer, principal, responsible person, or partner whose Social Security number is provided above.

Names and Social-Security numbers of all other individuals who prepared or assisted in preparing this document unless the bankruptcy petition preparer is not an individual:

If more than one person prepared this document, attach additional sheets conforming to the appropriate official form for each person.

*A bankruptcy petition preparer's failure to comply with the provisions of title 11 and the Federal Rules of Bankruptcy Procedure may result in fines or imprisonment or both. 11 U.S.C. §110; 18 U.S.C. §156.*

Case 12-10808-MLB   Doc 1   Filed 01/30/12   Entered 01/30/12 18:21:06   Page 3 of 9
Case 12-10808-MLB   Doc 24   Filed 04/30/12   Ent. 04/30/12 15:07:59   Pg. 15 of 35

EXHIBIT

- Contact us
- Forms
- About us

- Home
- Start your business
- Change or update your business information
- How to renew your license

## Search Business Licenses

**Your Search Criteria:**
**License Type:** All Business Licenses
**Last Name:** nicholls
**First Name:** rod
**County:** All Counties

[ New Search ]

### Click on a name below for more information.

**Results 1 - 8 of 8:**

| Name | UBI | Business ID | Location ID | City | State |
|---|---|---|---|---|---|
| AES INTL | 601773129 | 001 | 0001 | VASHON | WA |
|   AES INTL CORPORATION | | | | | |
|   Trade Name:ACTIVE EMPLOYMENT SCREENING, LTD. | | | | | |
| ALPHACIPHER ACQUISITION CORPORATION | 603055057 | 001 | 0001 | SEATTLE | WA |
|   ALPHACIPHER ACQUISITION CORPORATION | | | | | |
| ALPHACIPHER CORPORATION | 602113841 | 001 | 0001 | SEATTLE | WA |
|   VADIUM TECHNOLOGY, INC. | | | | | |
| AMERICAN MEDICAL PRODUCTS (USA), LLC | 601837052 | 001 | 0001 | TACOMA | WA |
|   AMERICAN MEDICAL SYSTEMS USA, LLC | | | | | |
| PLATINUM CHIMERA, LLC | 601969942 | 001 | 0001 | FEDERAL WAY | WA |
|   PLATINUM CHIMERA, LLC | | | | | |
| RODNEY GENE NICHOLLS | 602446072 | 001 | 0001 | HERMISTON | OR |
|   RODNEY GENE NICHOLLS | | | | | |
| SPOTLITE, INC. | 601676463 | 001 | 0001 | SEATTLE | WA |
|   SPOTLITE, INC. | | | | | |
|   Trade Name:SPOTLITE | | | | | |
| VADIUM WIRELESS, LLC | 603145351 | 001 | | | |
|   VADIUM WIRELESS, LLC | | | | | |

**Results 1 - 8 of 8:**

Information Current as of 04/27/2012 5:41AM Pacific Time

[ New Search ]

This site is limited to searching for business licenses issued through the Washington State Business Licensing Service.

- Contact us
- Forms
- About us
- Privacy

©2011 Washington State Department of Revenue and its licensors. All rights reserved.

**EXHIBIT 3**

Contact Us | Connect:  Search OSOS Web Sites  SEARCH

# Corporations Division

| Corporations Home | Nonprofit Home | Charities Home | Awards | Public Notices | Contact Info |

## Corporation Detail

Neither the State of Washington nor any agency, officer, or employee of the State of Washington warrants the accuracy, reliability, or timeliness of any information in the Public Access System and shall not be liable for any losses caused by such reliance on the accuracy, reliability, or timeliness of such information. While every effort is made to ensure the accuracy of this information, portions may be incorrect or not current. Any person or entity who relies on information obtained from the System does so at his or her own risk.

**VADIUM WIRELESS, LLC**

| | |
|---|---|
| UBI Number | 603145351 |
| Category | LLC |
| Active/Inactive | Active |
| State Of Incorporation | WA |
| WA Filing Date | 09/16/2011 |
| Expiration Date | 09/30/2012 |
| Inactive Date | |
| Duration | Perpetual |
| Registered Agent Information | |
| Agent Name | TG CORPORATE SERVICES INC |
| Address | 300 112TH AVE NE #301 |
| City | BELLEVUE |
| State | WA |
| ZIP | 98004 |
| Special Address Information | |
| Address | |
| City | |
| State | |
| Zip | |

### Governing Persons

| Title | Name | Address |
|---|---|---|
| Manager | Kunz, Tilo | 401 2nd Ave S SEATTLE, WA |
| Member | Vadium Technology Inc, * | 401 2nd Ave S SEATTLE, WA |
| Member | Belhara Security Solutions Inc, * | 475 Howe St #807 Vancouver Bc V6c 2b3 Canada, FO |
| Manager | Rios, Jose | 401 2nd Ave S SEATTLE, WA |
| Manager | Nicholls, Rod | 401 2nd Ave S SEATTLE, WA |

**EXHIBIT 4**

B26 (Official Form 26) (12/08)

# United States Bankruptcy Court
## Western District of Washington

In re  **Vadium Technology, Inc.**                                      Case No.  **12-10808**
                                              Debtor(s)          Chapter   **11**

## PERIODIC REPORT REGARDING VALUE, OPERATIONS AND PROFITABILITY OF ENTITIES IN WHICH THE ESTATE OF VADIUM TECHNOLOGY, INC. HOLDS A SUBSTANTIAL OR CONTROLLING INTEREST

This is the report as of December 31, 2011, on the value, operations and profitability of those entities in which the estate holds a substantial or controlling interest, as required by Bankruptcy Rule 2015.3.   The estate of **Vadium Technology, Inc.** holds a substantial or controlling interest in the following entities:

| Name of Entity | Interest of the Estate | Exhibits |
|---|---|---|
| Vadium IT Services, LLC | 100% | Tab 1 - A-C |
| Vadium Voice Communications, LLC | 82% | Tab 2 – A-C |

This periodic report (the "Periodic Report") contains separate reports ("Entity Reports") on the value, operations, and profitability of each entity listed above.

Each Entity Report shall consist of three exhibits.   Exhibits A contains a valuation estimate for each described entity as of a date not more than two years prior to the date of this report.   It also contains a description of the valuation method used.   Exhibits B contains a balance sheet, a statement of income (loss), a statement of cash flows, and a statement of changes in shareholders' or partners' equity (deficit) for the period covered by the Entity Report, along with summarized footnotes, as applicable for each respectively identified entity.   Exhibits C contains a description of each respectively identified entity's business operations.

Please note with respect to Exhibits A, it would be prohibitively expensive, unduly burdensome, and an inefficient use of estate assets for the Debtors to obtain current market valuations of the non-Debtors in which the Debtors hold a direct interest of 20% or more; therefore, the net book value is the basis for the valuation in Vadium IT Services, LLC and extrapolated value based on the last sale of equity securities of Vadium Voice Communications, LLC is the basis for its valuation.

Nothing contained in this filing shall constitute a waiver of any rights of the Debtors, specifically including the Debtors' right to amend the information.

The undersigned, having reviewed the above listing of entities in which the estate of **Vadium Technology, Inc.** holds a substantial or controlling interest, and being familiar with the Debtor's financial affairs, verifies under the penalty of perjury that the listing is complete, accurate and truthful to the best of his/her knowledge.

Date: 19-Feb-2012

_____
Signature of Authorized Individual

**Rodney Gene Nicholls**
_____
Name of Authorized Individual

**President & CEO**
_____
Title of Authorized Individual

**EXHIBIT** 

## Tab 1 - Exhibit A
## Valuation Estimate for Vadium IT Services, LLC held by Vadium Technology, Inc.

| Entities Held By Vadium Technology, Inc. | % of Interest | Value |
|---|---|---|
| Vadium IT Services, LLC | 100% | $5.00[1] |

1) The basis for the valuation of Vadium IT Services, LLC is the net book value calculated as total liabilities subtracted from its total assets as of December 31, 2011.   The only asset of this entity is $5 in cash, with there being no outstanding liabilities.    The Debtor does not have available any analyses prepared within the past two years supporting any comprehensive alternative valuation method for this entity.

Software Copyright (c) 1996-2012 CCH INCORPORATED - www.bestcase.com                                                    Best Case Bankruptcy

Case 12-10808-MLB    Doc 13    Filed 02/20/12    Entered 02/20/12 13:02:37    Page 2 of 18
Case 12-10808-MLB    Doc 24    Filed 04/30/12    Ent. 04/30/12 15:07:30    Pg. 19 of 35

<u>Tab – 1 Exhibit B</u>
**Financial Statements of Vadium IT Services, LLC**


# VADIUM IT SERVICES, LLC

(a Washington Limited Liability Company)


**Financial Statements**


**For the Year Ended December 31, 2011**

Software Copyright (c) 1996-2012 CCH INCORPORATED - www.bestcase.com                                    Best Case Bankruptcy

Case 12-10808-MLB    Doc 13    Filed 02/20/12    Entered 02/20/12 13:02:37    Page 3 of 18
Case 12-10808-MLB    Doc 24    Filed 04/30/12    Ent. 04/30/12 15:07:30    Pg. 20 of 35

Vadium IT Services, LLC
Balance Sheet
December 31, 2011

### Assets

*Current Assets:*

Cash .......................................................................................................... $                    5

*Total Current Assets:* ...........................................................................                    5

*Total Assets:* .......................................................................................... $                    5

### Liabilities and Members' Equity

*Current Liabilities:*

Accounts Payable ...................................................................................... $                    -

*Total Current Liabilities:* ....................................................................                    -

*Total Long-Term Debt:* ........................................................................                    -

*Members' Equity:*

Members Equity ........................................................................................                  205
Accumulated Deficit ..................................................................................                 (200)

*Total Members' Equity:* .......................................................................                    5

*Total Liabilities and Members' Equity:* ............................................. $                    5

Software Copyright (c) 1996-2012 CCH INCORPORATED - www.bestcase.com                                      Best Case Bankruptcy

Vadium IT Services, LLC.

Statement of Operations

For the Year Ended December 31, 2011

*Revenue:* ......................................................................................................................  $                        -

*Cost of Revenue:* .........................................................................................                        -

*Gross Margin:* ...............................................................................................                        -

*Expenses:*

General & Administrative ...............................................................                        -

*Total Expenses:* ............................................................................................                        -

*Net Income / (Loss):* ....................................................................................  $                        -

**Vadium IT Services, LLC.**

**Statement of Cash Flows**

**For the Year Ended December 31, 2011**

| | | |
|---|---|---|
| *Net Income / (Loss):* | $ | - |
| Adjustments to Reconcile Net Loss | | |
| To Cash Flows Used in Operating Activities: | | |
|   Depreciation | | - |
| *Cash Flows Used in Operating Activities:* | | - |
| *Cash Flows Used in Investing Activities:* | | |
|   Acquisition of Fixed Assets | | - |
|   Acquisition of Intangible Assets | | - |
| *Net Cash Used in Investing Activities:* | | - |
| *Cash Flows From Financing Activities:* | | |
|   Proceeds from Issuance of Member Units | | - |
| *Net Cash Provided By Financing Activities:* | | - |
| *Change in Cash:* | | 5 |
| *Cash – Beginning of the Period:* | | - |
| *Cash – End of the Period:* | $ | 5 |

Software Copyright (c) 1996-2012 CCH INCORPORATED - www.bestcase.com        Best Case Bankruptcy

Case 12-10808-MLB    Doc 13    Filed 02/20/12    Entered 02/20/12 13:02:37    Page 6 of 18
Case 12-10808-MLB    Doc 24    Filed 04/30/12    Ent. 04/30/12 15:07:30    Pg. 23 of 35

**Vadium IT Services, LLC**

**Statement of Changes in Members' Equity**

**For the Year Ended December 31, 2011**

| | Member Units | Deficit | Total |
|---|---|---|---|
| *Balance Beginning of the Period:* | $ 205 | $ (200) | $ 5 |
| *Net Loss:* | - | - | - |
| *Balance End of the Period:* | $ 205 | $ (200) | $ 5 |

Software Copyright (c) 1996-2012 CCH INCORPORATED - www.bestcase.com                                Best Case Bankruptcy

**Vadium IT Services, LLC**

**Notes to Financial Statements**

**December 31, 2011**

*Note 1: Nature of Business and Significant Accounting Policies:*

Vadium IT Services, LLC, ("Company") a shell company with no business operations or intended business purposes as of December 31, 2011. It is a wholly owned subsidiary of Vadium Technology, Inc.

*Use of Estimates*

The preparation of our financial statements are in conformity with accounting principles generally accepted in the United States of America and require management to make estimates and assumptions that affect the reported amounts of assets and liabilities and disclosure of contingent assets and liabilities at the date of the financial statements and the reported amounts of revenue and expenses during the reporting periods. On an ongoing basis, we evaluate our estimates. We base our estimates on historical experience and on various other assumptions that we believe are reasonable under the circumstances. Actual results could differ from those estimates.

Software Copyright (c) 1996-2012 CCH INCORPORATED - www.bestcase.com                                    Best Case Bankruptcy

Case 12-10808-MLB    Doc 13    Filed 02/20/12    Entered 02/20/12 13:02:37    Page 8 of 18
Case 12-10808-MLB    Doc 24    Filed 04/30/12    Ent. 04/30/12 15:07:30    Pg. 25 of 35

## TAB 1 Exhibit  C

| Name of Entity | Description of Business |
|---|---|
| Vadium IT Services, LLC | Inoperative Shell Company with no operations, |

Software Copyright (c) 1996-2012 CCH INCORPORATED - www.bestcase.com                     Best Case Bankruptcy

## TAB 2 - Exhibit A
### Valuation Estimate for Vadium Voice Communications
### Services, LLC held by Vadium Technology, Inc.

| Entities Held By Vadium Technology, Inc. | % of Interest | Value |
|---|---|---|
| Vadium Voice Communications, LLC | 82% | $7,500,000 |

1) The basis for the valuation of Vadium Voice Communications, LLC (VVC) is the extrapolation of the pending sale to an unaffiliated third party, Belhara Security Solutions, Inc. of a 25% interest in VVC for $2,500,000. At the closing of this planned sale of an interest in this entity, the Debtor will own 75% of VVC. The Debtor does not have available any analyses prepared within the past two years supporting any comprehensive alternative valuation method for this entity. Currently the Debtor owns an 82% interest in VVC. Debtor has entered into an agreement with the holder of the other 18% interest in VVC that upon payment of $2,000,000 plus accrued interest that VVC will receive that 18% interest back in its treasury and the Debtor will become a 100% owner of VVC. Once this payment is made to the holder of this position, then VVC will issue the 25% interest described above to Belhara Security Solutions, Inc.

Software Copyright (c) 1996-2012 CCH INCORPORATED - www.bestcase.com                                    Best Case Bankruptcy

Case 12-10808-MLB    Doc 13    Filed 02/20/12    Entered 02/20/12 13:02:37    Page 10 of 18
Case 12-10808-MLB    Doc 24    Filed 04/30/12    Ent. 04/30/12 15:07:30    Pg. 27 of 35

# VADIUM VOICE COMMUNICATIONS, LLC

(a Washington Limited Liability Company)

## Financial Statements

### For the Year Ended December 31, 2011

Software Copyright (c) 1996-2012 CCH INCORPORATED - www.bestcase.com                                    Best Case Bankruptcy

**Vadium Voice Communications, LLC**
**Balance Sheet**
**December 31, 2011**

<u>Assets</u>

*Current Assets:*

| | | |
|---|---|---|
| Cash | $ | 6 |
| | | |
| *Total Current Assets:* | | 6 |

*Fixed Assets:*

| | |
|---|---|
| Computer Equipment | 5,044 |
| Accumulated Depreciation | (1,400) |
| | |
| *Total Fixed Assets:* | 3,644 |

*Other Assets:*

| | |
|---|---|
| AlphaCipher Technology Platform License – Net of Amortization | 318,750 |
| Organizational Costs | 200 |
| | |
| *Total Other Assets:* | 322,313 |
| | |
| *Total Assets:* | 322,319 |

<u>Liabilities and Members' Equity</u>

*Current Liabilities:*

| | |
|---|---|
| Accounts Payable | - |
| | |
| *Total Current Liabilities:* | - |
| | |
| *Total Long-Term Debt:* | - |

*Members' Equity:*

| | |
|---|---|
| Class B Members Equity | 2,000,000 |
| Class A Members Equity | 205 |
| Accumulated Deficit | (1,677,886) |
| | |
| *Total Members' Equity:* | 322,319 |
| | |
| *Total Liabilities and Members' Equity:* | 322,319 |

Software Copyright (c) 1996-2012 CCH INCORPORATED - www.bestcase.com

Best Case Bankruptcy

Vadium Voice Communications, LLC.

Statement of Operations

For the Year Ended December 31, 2011


*Revenue:* ............................................................................................................................... $                    -

*Cost of Revenue:* .....................................................................................................                    -

*Gross Margin:* .........................................................................................................                    -

*Expenses:*

   General & Administrative ....................................................................................                    -

*Total Expenses:* .......................................................................................................                    -

*Net Income / (Loss):* ...............................................................................................  $                    -

**Vadium Voice Communications, LLC.**
**Statement of Cash Flows**
**For the Year Ended December 31, 2011**

| | | |
|---|---|---|
| *Net Income / (Loss):* | $ | - |
| Adjustments to Reconcile Net Loss | | |
| To Cash Flows Used in Operating Activities: | | |
| Depreciation | | - |
| | | |
| *Cash Flows Used in Operating Activities:* | | - |
| | | |
| *Cash Flows Used in Investing Activities:* | | |
| Acquisition of Fixed Assets | | - |
| Acquisition of Intangible Assets | | - |
| | | |
| *Net Cash Used in Investing Activities:* | | - |
| | | |
| *Cash Flows From Financing Activities:* | | |
| Proceeds from Issuance of Class B Member Units | | - |
| Proceeds from Issuance of Class A Member Units | | - |
| | | |
| *Net Cash Provided By Financing Activities:* | | - |
| | | |
| *Change in Cash:* | | 6 |
| | | |
| *Cash – Beginning of the Period:* | | - |
| | | |
| *Cash – End of the Period:* | $ | 6 |

Software Copyright (c) 1996-2012 CCH INCORPORATED - www.bestcase.com                                Best Case Bankruptcy

Case 12-10808-MLB    Doc 13    Filed 02/20/12    Entered 02/20/12 13:02:37    Page 14 of 18
Case 12-10808-MLB    Doc 24    Filed 04/30/12    Ent. 04/30/12 15:07:30    Pg. 31 of 35

**Vadium Voice Communications, LLC**
**Statement of Changes in Members' Equity**
**For the Year Ended December 31, 2011**

| | Class B Member Units | Class A Member Units | Accumulated Deficit | Total |
|---|---|---|---|---|
| Balance Beginning of the Period: | $ 2,000,000 | $ 205 | $ (1,677,886) | $ 322,319 |
| Net Loss: | - | - | - | - |
| Balance End of the Period: | $ 2,000,000 | $ 205 | $ (1,677,886) | $ 322,319 |

Software Copyright (c) 1996-2012 CCH INCORPORATED - www.bestcase.com

Best Case Bankruptcy

Case 12-10808-MLB   Doc 13   Filed 02/20/12   Entered 02/20/12 13:02:37   Page 15 of 18
Case 12-10808-MLB   Doc 24   Filed 04/30/12   Ent. 04/30/12 15:07:30   Pg. 32 of 35

**Vadium Voice Communications, LLC**
Notes to Financial Statements
December 31, 2011

*Note 1: Nature of Business and Significant Accounting Policies:*

Vadium Voice Communications, LLC, ("Company") a development stage software company that is a subsidiary of Vadium Technology, Inc. The Company's holds the exclusive license to commercialize the AlphaCipher Technology Platform with the GSM Cellular communications market. The Company operations is currently suspended pending completion of further financing from Belhara Security Solutions, Inc. At completion of additional financing, the Company anticipates restarting full operations which will include the development of enterprise grade AlphaCipher enabled GSM Mobile Telephony applications, which will be marketed on a global basis through a series of direct and indirect distribution channels.

*Use of Estimates*

The preparation of our financial statements are in conformity with accounting principles generally accepted in the United States of America and require management to make estimates and assumptions that affect the reported amounts of assets and liabilities and disclosure of contingent assets and liabilities at the date of the financial statements and the reported amounts of revenue and expenses during the reporting periods. On an ongoing basis, we evaluate our estimates. We base our estimates on historical experience and on various other assumptions that we believe are reasonable under the circumstances. Actual results could differ from those estimates.

*Currency*

All amounts reported in these Financial Statements are reported in United States Dollars.

*Property and Equipment*

Property and equipment are stated at cost. Property and equipment are depreciated by the straight-line method over the estimated useful lives of the assets, generally three to seven years. As the Company's operations have been suspended, so has the recognition of depreciation on its assets for the year.

*Intangible Assets*

The Company's intangible assets consist of the AlphaCipher Technology Platform License which are stated at cost, net of accumulated amortization. The Company's intangible assets are amortized by the straight-line method over the estimated useful lives of the assets, generally twenty years. As the Company's operations have been suspended, so has the recognition of amortization on its assets for the year.

*Research and Development*

Research and development costs are expensed as incurred.

Software Copyright (c) 1996-2012 CCH INCORPORATED - www.bestcase.com                                                Best Case Bankruptcy

Case 12-10808-MLB    Doc 13    Filed 02/20/12    Entered 02/20/12 13:02:37    Page 16 of 18
Case 12-10808-MLB    Doc 24    Filed 04/30/12    Ent. 04/30/12 15:07:30    Pg. 33 of 35

**Vadium Voice Communications, LLC**
**Notes to Interim Financial Statements**
**December 31, 2011**

_Note_ 2: _Members Equity:_

The Company currently has two Classes of Membership Units, with the following rights and privileges:

_Class B Member Units_:   CADG International Pte. Ltd., has subscribed for 1,000,000 Class B Units at a price of $4.00 Per Unit.   Through the date of these financial statements CADG has paid for and fully vested 500,000 of the 1,000,000 subscribed units.   Per the terms and conditions of the Company's Operating Agreement the Class B Units are to receive a 3X Preferred Return on its capital contributions.

_Class A Member Units_:   The Company has issued 2,333,333 of Class A Membership Units to founding member Vadium Technology, Inc., in exchange for organizing the Company.

Currently there is an agreement between the Class A and Class B Members of the Company, where by upon either the Company, the Class A Member or certain Officer of the Class A Member and the Company make a cumulative payment of $2,000,000 plus accrued interest, the Class B Member will return its Units in the Company back to the Company.   At December 31, 2011 the total amount of the buyback provision is approximately $2,460,000, of which $2,000,000 has been paid to the Class B Member on behalf of the Class A Member by AlphaCipher Acquisition Corporation ("AAC"), an affiliated company of Belhara Security Solutions, Inc ("Belhara.")   Belhara through AAC is acquiring a substantially all the assets of the Class A Member, which will include the Class A Members Units in the Company.

Software Copyright (c) 1996-2012 CCH INCORPORATED - www.bestcase.com                                    Best Case Bankruptcy

Case 12-10808-MLB    Doc 13    Filed 02/20/12    Entered 02/20/12 13:02:37    Page 17 of 18
Case 12-10808-MLB    Doc 24    Filed 04/30/12    Ent. 04/30/12 15:07:30    Pg. 34 of 35

## TAB 2 - Exhibit C

| Name of Entity | Description of Business |
|---|---|
| Vadium Voice Communications, LLC | Vadium Voice Communications, LLC, ("Company") a development stage software company that is a subsidiary of Vadium Technology, Inc. The Company's holds the exclusive license to commercialize the AlphaCipher Technology Platform with the GSM Cellular communications market. The Company operations is currently suspended pending completion of further financing from Belhara Security Solutions, Inc. At completion of additional financing, the Company anticipates restarting full operations which will include the development of enterprise grade AlphaCipher enabled GSM Mobile Telephony applications, which will be marketed on a global basis through a series of direct and indirect distribution channels/ |

Software Copyright (c) 1996-2012 CCH INCORPORATED - www.bestcase.com

Best Case Bankruptcy

Case 12-10808-MLB    Doc 13    Filed 02/20/12    Entered 02/20/12 13:02:37    Page 18 of 18
Case 12-10808-MLB    Doc 24    Filed 04/30/12    Ent. 04/30/12 15:07:30    Pg. 35 of 35